**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WHITNEY BAILEY, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-19-1147-JD |
| | ) | |
| (1) STEPHAN WILSON, | ) | |
| (2) SISSY OSTEEN, | ) | |
| (3) JORGE ATILES, | ) | |
| (4) JARROD NOFTSGER, AND | ) | |
| (5) GARY SANDEFUR | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JORGE ATILES' MOTION TO DISMISS [DOC. 16]**

---

Stanley M. Ward, OBA#9351
Geoffrey A. Tabor, OBA#32880
**WARD & GLASS, L.L.P.**
1601 N.W. 36th Street, Suite 100
Norman, Oklahoma 73072
405-360-9700 / 405-360-7902 Fax
WARD & GLASS, L.L.P.
**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………….……………..……..……………iii-iv

**INTRODUCTION**…………………………………………………………………..1-2

**ARGUMENTS & AUTHORITIES**……………………….…………….……..……..2-15

I. **The Scope and Nature of Plaintiff's Claim against Atiles**…………..…..……2-3

II. **Plaintiff's FAC States a Plausible First Amendment Claim against Atiles**……………………………..…………..…………..……………3-5

III. **Atiles' Conduct Complained of was an Adverse Employment Action**……………………………………………...…………..…………5-8

IV. **Atiles is not Entitled to Qualified Immunity**…………………….………...……8-15

**CONCLUSION**…………………………………………...…………………15

# TABLE OF AUTHORITIES

Allen v. Oklahoma Department of Labor,
2009 WL 10702951 (W.D. Okla. Apr. 21, 2009) (Cauthron, J.)……………….………13

Ashcroft v. Iqbal,
556 U.S. 662 (2009)………..……………………………………………..…………3

Baca v. Sklar,
398 F.3d 1210, 1219 (10th Cir. 2005)……………………….………………..……………6

Bertot v. Sch. Dist. No. 1, Albany County, Wyoming,
522 F.2d 1171 (10th Cir. 1975)………………………...………………………………12

Brokers' Choice of America, Inc. v. NBC Universal, Inc.,
861 F.3d 1081, 1105 (10th Cir. 2017)……………………………………..……….3-4

Elrod v. Burns,
427 U.S. 347, 357 (1976)……………………..……………………..…………………11

Estate of Reat v. Rodriguez,
824 F.3d 960, 964-65 (10th Cir. 2016)…………………………………...………8

Gann v. Cline,
519 F.3d 1090 (10th Cir. 2008)…………………………………………..……………11

Grissom v. Roberts,
902 F.3d 1162, 1168 (10th Cir. 2018)……………………...………………..…………..9

Hook v. Regents of Univ. of California,
394 Fed.Appx. 522, 534 (10th Cir. 2010)……………………………..……….………..5

Jeffries v. Kansas,
147 F.3d 1220, 1232 (10th Cir. 1998)…………..……………………...…………5

Jones v. Oklahoma City Pub. Sch.,
617 F.3d 1273 (10th Cir. 2010)……………………..…………………………………6

Keyishian v. Board of Regents of the University of the State of New York,
385 U.S. 589 (1967)……………………………………………..…………………..14

Maestas v. Segura,
416 F.3d 1182, 1188 n.5 (10th Cir. 2005)……………………………….…………..11

Paden v. Bd. of the County Com'rs of the County of Texas,
846 F.Supp.2d 1217 (W.D. Okla. Feb. 9, 2012) (Miles-LaGrange, J.)………........…..13-14

Perry v. Sindermann,
408 U.S. 593 (1972)…………………………………………………………………..14-16

Piercy v. Maketa,
480 F.3d 1192, 1203 (10th Cir. 2007)………………………….……………………..………5

Rampey v. Allen,
501 F.2d 1090 (10th Cir. 1974)………………………………..…..……………..……12

Rutan v. Republican Part of Illinois,
497 U.S. 62, 73, (1990)……………………………………………………...……….7

Sanchez v. Denver Pub. Sch.,
164 F.3d 527, 532 (10th Cir. 1998)…………………..……………………………………5

Schwartz v. Booker,
702 F.3d 573, 579 (10th Cir. 2012)………………………………….……………..…………9

Scott v. Harris,
550 U.S. 372, (2007)…………………………………………………..….……………8

Serna v. Colo. Dep't of Corrs.,
455 F.3d 1146, 1150 (10th Cir. 2006)……………………………………..……………8

Shero v. City of Grove, Oklahoma,
510 F.3d 1196, 1200 (10th Cir. 2007)……………………...…………..………..………9

Snyder v. City of Moab,
354 F.3d 1179, 1184 (10th Cir. 2003)…………………….……………………………10

Stinnett v. Safeway, Inc.,
337 F.3d 1213 (10th Cir. 2003)……………………..……………………..……….6-7

Walton v. Powell,
812 F.3d 1204 (10th Cir. 2016)………………………………...……………..11-12

York v. City of Las Cruces,
523 F.3d 1205, 1212 (10th Cir. 2008)…………………………………....……………..9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WHITNEY BAILEY, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-19-1147-JD |
| | ) | |
| (1) STEPHAN WILSON, | ) | |
| (2) SISSY OSTEEN, | ) | |
| (3) JORGE ATILES, | ) | |
| (4) JARROD NOFTSGER, AND | ) | |
| (5) GARY SANDEFUR | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JORGE ATILES' MOTION TO DISMISS [DOC. 16]**

---

Plaintiff, Whitney Bailey, Ph.D. ("Plaintiff") submits this Response in Opposition to Defendant Jorge Atiles' Motion to Dismiss [Doc. 16] as to Plaintiff's First Amended Complaint ("FAC").

For the reasons stated herein, the Motion to Dismiss must be denied. In support of this Response, Plaintiff shows this Court the following:

**INTRODUCTION**

Defendants Wilson, Osteen, Sandefur, and Noftsger all filed Partial Answers and Motions for Partial Dismissal, despite the fact that Plaintiff has advanced one claim under the First Amendment against each of them. Thus, it is somewhat convoluted what these Defendants have answered and what they precisely seek to dismiss, given that their various

unlawful acts are all connected as a continuing wrongful deprivation perpetrated against Plaintiff. As discussed in more detail below, Plaintiff has alleged specific and respective violations of the First Amendment against each Defendant. Defendants, however, have either sought dismissal on various items not pled against them or have tried to wrongfully "shave" down portions of Plaintiff's claims against each of them. Regardless of these ambiguities in the Defendants' pleadings, it is clear that Plaintiff's FAC, taken all as true, states claims for relief against each of those Defendants. Atiles, on the other hand, seeks to completely dismiss himself from this litigation. For similar reasons, his Motion to Dismiss must be denied because the allegations lodged against him in the FAC meet the plausibility standard.

As the FAC states, and as Plaintiff is confident discovery will show, each of these five Defendants played a unique and important role in the continued and multi-faceted nature of the deprivation of Plaintiff's First Amendment rights. Each of the Defendants acted unlawfully within their respective and unique decision-making authorities at Oklahoma State University ("OSU").

## ARGUMENTS & AUTHORITIES

### I. The Scope and Nature of Plaintiff's Claim against Atiles

Paragraphs 58 and 66 of the FAC sets forth the detailed, summarized, and itemized bases currently known for Plaintiff's claim against the respective Defendants. Atiles violated Plaintiff's First Amendment rights in a myriad of ways, all of which are connected and must be read together: (1) Denying Plaintiff's return and resultant compensation for

her Cooperative Extension Service work; (2) Treating Plaintiff differently than other similarly-situated faculty and/or employees of OSU who previously engaged in service or appointments with other governmental authorities and/or administrations in their respective fields of expertise; (3) Treating Plaintiff's appointment to and service for the Trump Administration different from prior professional accolades given to Plaintiff not involving the Trump Administration; and (4) Displaying difficulty and strain with Plaintiff when Plaintiff return from the Trump Administration and when Plaintiff attempted to re-enter work associated with the Clark family and the Clark Gerontology Fund. [Doc. 14 at ¶¶58(E) and 66(B), and (I)-(J)].

## II. Plaintiff's FAC States a Plausible First Amendment Claim against Atiles.

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.E.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.E.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 1949. Gauging the sufficiency of a complaint at the motion to dismiss stage is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. When evaluating a motion to dismiss, the reviewing court "must liberally construe the pleading and make all reasonable inferences in favor of the non-moving party." Brokers' Choice of America, Inc. v. NBC

Universal, Inc., 861 F.3d 1081, 1105 (10th Cir. 2017) (citing Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002)).

With these standards and the bases of Plaintiff's claim against Atiles in mind, Plaintiff's 19-page FAC clearly satisfies the Twombly-Iqbal plausibility standard. Regarding Atiles, there are a bevy of specific, detailed, and enumerated allegations against him that define the nature and contours of his connected unlawful conduct. At this stage of litigation, every single one of these allegations must be taken as true, and all reasonable inferences must lean liberally in Plaintiff's favor. For these reasons, Atiles' Motion must be denied.

Atiles is the only Defendant in this case that seeks a full dismissal from this lawsuit. Thus, the issue of improper urges of "partial" dismissals (as done by the other four Defendants) is not applicable here. However, to the extent needed, Plaintiff will clarify that she is not suing Atiles for a violation of the First Amendment related to the RPT request per ¶55 of the FAC. Rather, Atiles has merely reaffirmed and supported the decision generally to not grant Plaintiff's RPT request.[1] Atiles, however, was clearly involved in employment decisions made after Plaintiff's return from the Trump Administration. This is why Atiles is not identified in ¶66(F)-(G) of the FAC. Atiles' arguments must fail because the bases of unlawful acts outlined against him in ¶¶ 58, 59, and 66(B) and (I)-(J)

---

[1] Atiles misunderstands that the allegations against him in ¶59 of the FAC, which are not related to the RPT request, but rather the specific employment decisions he undertook regarding Plaintiff's return from the Trump Administration (which are his actions related to the Cooperative Extension Service work). ¶59 states that each Defendant "continued to reaffirm their wrongful positions on **each of these topics**." (Emphasis added).

of the FAC are a part of the same continuing course of unlawful conduct enumerated as one First Amendment Claim. Plaintiff's FAC has adequately stated that all of these acts were connected and a part of the same continuous course of wrongful conduct aimed at Plaintiff by all of the Defendants. [See Doc. 14 at ¶¶54-55, 58-59, and 67].

### III. Atiles' Conduct Complained of was an Adverse Employment Action.

The FAC makes it very clear that Atiles engaged in a series of multi-faceted conduct that infringed upon Plaintiff's First Amendment rights. "The Tenth Circuit liberally defines the phrase 'adverse employment action.'" Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998) (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998); Jeffries v. Kansas, 147 F.3d 1220, 1232 (10th Cir. 1998)). Indeed, "[s]uch actions are not simply limited to monetary losses in the form of wages or benefits." Id. (*citing* Berry v. Stevinson Chevrolet, 74 F.3d 980, 986-87 (10th Cir. 1996)). Rather, courts take a case-by-case approach by examining the unique facts relevant to each case at hand. *See* Jeffries, 147 F.3d at 1232. Lastly, the Tenth Circuit has recognized that an adverse employment action can take many forms, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007). The test to determine what is an adverse employment action is identical for First Amendment claims and Title VII retaliation claims. Hook v. Regents of Univ. of California, 394 Fed.Appx. 522, 534 (10th Cir. 2010) (citing Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.E.2d 345 (2006)). Determining what is

an adverse employment action is a fact question for the jury. *See* Baca v. Sklar, 398 F.3d 1210, 1219 (10th Cir. 2005).

The case Jones v. Oklahoma City Pub. Sch., 617 F.3d 1273 (10th Cir. 2010) is highly instructive to the adverse employment action issue at bar. In that case, a former curriculum director sued her employer, a school, for age discrimination in demoting her to elementary school principal. The Plaintiff did not experience a decrease in pay or benefits in her first year after the position switch, but only experienced a $17,000.00 decrease in pay the following year. The Plaintiff's vacation benefits were reduced immediately. Id. at 1279-80. Among several arguments on appeal, the Defendant argued that the demotion did not amount to an adverse employment action. The Tenth Circuit disagreed with the Defendant. In so holding, the Tenth Circuit noted the following: "Although [Defendant] argues that [Plaintiff] did not experience a demotion, she certainly lost professional prestige and fell to a lower position in the district's organizational hierarchy. Also, [Defendant's] argument that a five-dollar reduction in daily pay is not sufficient to constitute an adverse employment action is simply incorrect…this case conclusively shows that [Plaintiff] suffered an adverse employment action[.]" Id. at 1280.

This Court is also well-guided by Stinnett v. Safeway, Inc., 337 F.3d 1213 (10th Cir. 2003). In Stinnett, a female employee brought several claims against her employer, including disparate treatment and hostile work environment claims under Title VII after she was transferred back to a permanent retail meat-wrapping position from a temporary technical assistance position. The U.S. District Court for the District of Colorado granted

the Defendant's motion for summary judgment, but the Tenth Circuit reversed in part, finding that summary judgment should not have been granted on the adverse employment action issue. In so holding, the Tenth Circuit wrote the following:

> We cannot say on this record that [Plaintiff's] transfer did not result in a significant change in responsibilities—from providing skilled technical assistance to wrapping meat. **Although she maintained her wage level, seniority, and title as meat wrapper throughout the relevant time period, there is evidence that the reassignment resulted in a de facto reduction in responsibility and required a lesser degree of skill.** We conclude that [Plaintiff] has submitted sufficient evidence to suggest that she suffered an "adverse employment action."

Id. at 1217 (emphasis added).

Lastly, and perhaps most importantly, the Supreme Court has noted that "[e]mployees who find themselves in dead-end positions due to their political backgrounds *are* adversely affected. They will feel a significant obligation to support political positions held by their superiors, and to refrain from acting on the political views they actually hold, in order to progress up the career ladder." Rutan v. Republican Part of Illinois, 497 U.S. 62, 73, 110 S.Ct. 2729, 111 L.E.2d 52 (1990) (emphasis in original).

With the holdings of Jones, Stinnett, Rutan, and similar binding authorities discussed *supra* in mind, it is clear that Plaintiff's FAC adequately states that Plaintiff suffered an adverse employment action from the multi-faceted nature of Atiles' conduct. Indeed, Plaintiff expressly states in her FAC that Atiles' conduct denied her of "resultant compensation" [Doc. 14 at ¶66(B)]. Additionally, Atiles' participation in the conduct of treating Plaintiff differently than other similarly-situated OSU personnel is indicative of

the Defendants' political bias towards Plaintiff. This broad-sweeping and institutional bias, **along with the direct economic damages** to Plaintiff's compensation, damaged Plaintiff's reputation within and outside OSU. This type of damage that accompanies the economic harms of Atiles' conduct is squarely contemplated by Title VII and First Amendment jurisprudence pertaining to adverse employment actions. Thus, Atiles' Motion must be denied on this issue.

## IV. Atiles is not Entitled to Qualified Immunity.

For the qualified immunity analysis, the plaintiff must meet a two-part burden: "(1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." Serna v. Colo. Dep't of Corrs., 455 F.3d 1146, 1150 (10th Cir. 2006) (quotations marks omitted). For the first prong of the analysis, courts must ask "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1774, 167 L.E.2d 686 (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.E.2d 272 (2001)).

For the second prong of the analysis, a right is clearly established when a reasonable official would have understood that what he or she was doing violated that right. *See* Estate of Reat v. Rodriguez, 824 F.3d 960, 964-65 (10th Cir. 2016). In showing that a law was clearly established, a plaintiff may cite an on-point Supreme Court or Tenth Circuit decision. Alternatively, the plaintiff may also show the clearly established authorities from

other courts holding the law is what the plaintiff maintains. *See* Grissom v. Roberts, 902 F.3d 1162, 1168 (10th Cir. 2018). "However, [the clearly established prong] does not mean that there must be a published case involving identical facts; otherwise we would be required to find qualified immunity wherever we have a new fact pattern." York v. City of Las Cruces, 523 F.3d 1205, 1212 (10th Cir. 2008).

First, qualified immunity analyses are highly fact-intensive, given that the facts of existing jurisprudence and the facts developed in a case at bar must be compared. Thus, disposing of some or all of Plaintiff's detailed FAC at the motion to dismiss stage, without any discovery, is premature. Indeed, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012). In other words, courts apply "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally." Shero v. City of Grove, Oklahoma, 510 F.3d 1196, 1200 (10th Cir. 2007). The FAC contains much more than plausible allegations stating that Atiles violated Plaintiff's clearly established First Amendment rights.

The FAC plainly states that Atiles violated Plaintiff's First Amendment rights and that it was clearly established at the time the events giving rise to this lawsuit occurred that Atiles' conduct complained of was unlawful. A reasonable person in Atiles' position would have known that the following conduct, particularly when read together, was unlawful:

1. Denying an employee the ability to return to her prior work programs/assignments because that employee served in a particular political administration, supported a particular political candidate, and/or belonged to a particular political party. [*See* Doc. 14 at ¶66(B)];
2. Denying an employee the ability to return to a prior professorship/employment position because that employee served in a particular political administration, supported a particular political candidate, and/or belonged to a particular political party. [*See* Doc. 14 at ¶¶58(E)]; and
3. Treating an employee professor differently than other similarly-situated employees who worked for the same employer who previously engaged in similar public service and received similar professional accolades because that employee served in a particular political administration, supported a particular political candidate, and/or belonged to a particular political party. [*See* Doc. 14 at ¶66(I)-(J)].

No reasonable person could read the above-described conduct that Atiles engaged in and believe that it was all lawful. The Tenth Circuit and Supreme Court have clearly set forth the foundations for political association claims. "The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." Snyder v. City of Moab, 354 F.3d 1179, 1184 (10th Cir. 2003) (citation omitted). It is also important to note that the Tenth Circuit has even permitted First Amendment claims by public employees on a

"perceived affiliation" theory, or when the plaintiff was retaliated against by the defendant because the defendant perceived (correctly or incorrectly) the plaintiff's political association. *See* Gann v. Cline, 519 F.3d 1090 (10th Cir. 2008). The Supreme Court has noted that "[t]here **can no longer be any doubt** that freedom to associate with others for the common advancement of political beliefs and ideas is…protected by the First and Fourteenth Amendments." Elrod v. Burns, 427 U.S. 347, 357 (1976) (emphasis added) (citations omitted). In the context of First Amendment claims, it is vital to note that the Tenth Circuit has held that unlawful "retaliation" includes actions "not amounting to termination of employment or the substantial equivalent of dismissal." Maestas v. Segura, 416 F.3d 1182, 1188 n.5 (10th Cir. 2005) (quotations omitted).

There are several important Tenth Circuit cases to discuss. In Walton v. Powell, 812 F.3d 1204 (10th Cir. 2016), a public employee brought a political association claim against her former employer. In that case, the employee (a Republican appointee and longtime member of the party) was terminated by her employer purportedly due to her Republican affiliations and appointment by the prior Republican regime in her office. Id. at 1206-07. The U.S. District Court for the District of New Mexico granted the employer's motion for summary judgment as to the employee's political association claim. On appeal, the Tenth Circuit reversed this portion of the District Court's ruling. Then-Judge Gorsuch wrote the Tenth Circuit's opinion, where he noted that when the adverse employment actions were taken against the employee, "she was a well-known ally of a political figure and his party and administration" among other things. Id. at 1213. Judge Gorsuch noted that these facts

"leave us no reason to doubt that a reasonable jury could find [the employee's] affiliation with the [Republican] administration was a substantial or motivating factor in her dismissal. (citing Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1450-52 (10th Cir. 1997)). Lastly, Judge Gorsuch noted that the employer's qualified immunity defense was in error, because it was clearly established that a reasonable official in the defendant's position would have known that taking such action against the employee would be illegal. Id. at 1214.

In Rampey v. Allen, 501 F.2d 1090 (10th Cir. 1974), faculty members were terminated from the Oklahoma College of Liberal Arts (now called USAO) purportedly because they spoke out against the college president and some of the college's regents. Judge Doyle formerly of this Court found that the evidence did not support the plaintiffs' claims that they were retaliated against because of their speech. In reversing the District Court, the Tenth Circuit wrote the following:

> While a college president is entitled to respect and authority within his sphere, this does not extend to the exercise of absolute control over the **associations and expressions** of the faculty members…he cannot demand such attitudes at the expense of the individual rights of the faculty members and there can be little question but that such demands infringe the rights of the **faculty members to express legitimate views in the course of formulating ideas** in an academic atmosphere.

Id. at 1098 (emphasis added).[2]

[2] *Accord* Bertot v. Sch. Dist. No. 1, Albany County, Wyoming, 522 F.2d 1171 (10th Cir. 1975) (public teacher's acts of assistance and association with so-called underground newspaper were protected, although no writing of her own was involved.)

There are several important local decisions showing that qualified immunity is not applicable to this case as well. In Allen v. Oklahoma Department of Labor, 2009 WL 10702951 (W.D. Okla. Apr. 21, 2009) (Cauthron, J.), a former employee sued ODOL on several theories, including a political association claim. The employee had voiced her public support for ODOL's former commissioner, a Republican. However, a Democrat eventually was elected to the Republican commissioner's position. During this time, Plaintiff not only publicly supported the former Republican commissioner, but also George W. Bush, Ronald Reagan, and presumably, the Republican Party. Id. at *1. The plaintiff was first purportedly demoted by a devout Democrat at ODOL, and ultimately slated to be terminated after these associations and expressions were made (the plaintiff resigned before the termination went into effect). Id. at *2. Judge Cauthron denied ODOL's motion for summary judgment as to plaintiff's political association claim, and noted that the plaintiff "met her burden of demonstrating a constitutional violation" by showing that she had been demoted, had some of her responsibilities taken from her, and that she was not given any work duties. Id. at *6. As to the second prong of qualified immunity, Judge Cauthron agreed with the plaintiff and noted that "the law in 2007 was also clear that public employees received protection 'from discrimination upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance.'" Id. at *7 (quoting Mason, 115 F.3d 1442, 1451 (10th Cir. 1997)).

Furthermore, in Paden v. Bd. of the County Com'rs of the County of Texas, 846 F.Supp.2d 1217 (W.D. Okla. Feb. 9, 2012) (Miles-LaGrange, J.), this Court denied an

employer's motion for summary judgment on an employee's political association claim. In that case, the employee claimed that his employer violated his political association rights by dismissing him for supporting a rival political candidate for his employer's office. The employee premised his claim on comments from his employer concerning plaintiff's political support and the political rival. Id. at 1220. This Court denied the employer's motion for summary judgment on substantive grounds and on qualified immunity. Id. at 1222-23.

The Supreme Court has long recognized the importance of First Amendment rights for those in higher academia. Keyishian v. Board of Regents of the University of the State of New York, 385 U.S. 589 (1967) stands for the basic proposition that professors have First Amendment rights in expression related to their academic scholarship. Indeed, the Supreme Court wrote that "[o]ur Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." Id. at 603.

In Perry v. Sindermann, 408 U.S. 593 (1972), a college professor's contract was not renewed by his college. The professor sued, among other theories, alleging that the college violated his free speech rights. On appeal, the Supreme Court held that the professor's lack of a contractual or tenure right to reemployment, taken alone, did not defeat his claim that nonrenewal of his contracts violated his right to free speech. Indeed, the Court wrote that the "lack of a contractual or tenure 'right' to re-employment…is immaterial to his free

speech claim." Id. at 597-98. The Court also noted that it "has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights." Id. at 598 (citing Shelton v. Tucker, 364 U.S. 479 (1960); Keyishian, 385 U.S. 589 (1967)). The Court also noted that "if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." Id. at 597. With these authorities at hand, the Supreme Court held that the grant of summary judgment in the college's favor was improper. Id. at 599. The observations from the Supreme Court regarding the lack of an "entitlement" being immaterial to a political association claim are important because the Defendants in the case at bar have argued that Plaintiff had no entitlement to certain coursework and positions upon her return from the Trump administration. The Defendants' position on this topic are misplaced.

For the reasons stated herein, Plaintiff's FAC plausibly establishes that Atiles violated her First Amendment right of political association, and that those rights were clearly established at the time Atiles engaged in the conduct complained of.

**CONCLUSION**

Plaintiff's 19-page FAC plausibly states a First Amendment political association claim against Atiles. For these reasons, Plaintiff respectfully requests that this Court deny Atiles' Motion.

Respectfully submitted,

/s/ Geoffrey A. Tabor

Stanley M. Ward, OBA#9351
Geoffrey A. Tabor, OBA #32880
**WARD & GLASS, L.L.P.**
1601 36th Avenue, N.W.
Norman, Oklahoma 73072
(405) 360-9700 / (405) 360-7902 (fax)
ATTORNEYS FOR PLAINTIFF
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

**CERTIFICATE OF SERVICE**

I certify that on the above file-stamped date that I filed this document with the Court Clerk via the Electronic Filing System for filing and transmittal, it was disseminated to the following counsel of record:

Margaret McMorrow-Love
John J. Love
LOVE LAW FIRM
228 Robert S. Kerr Ave., Suite 540
Oklahoma City, OK 73102
405-235-3848
mml@lovelawfirm.legal

Steve R. Stephens
Clinton W. Pratt
Board of Regents for the Oklahoma Agricultural and Mechanical Colleges
5th Floor, Student Union Building
Stillwater, OK 74078-7044
Steve.stephens@okstate.edu
Clint.pratt@okstate.edu

ATTORNEYS FOR DEFENDANTS

/s/ Geoffrey A. Tabor